1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                          FOR THE EASTERN DISTRICT OF CALIFORNIA

10    DANNY GEROME YOUNG,

11            Plaintiff,                        No. CIV S-03-2225 GEB KJM P

12        vs.

13    J. PULSIPHER, et al.,

14            Defendants.                       FINDINGS & RECOMMENDATIONS

15    _____/

16            Plaintiff is a state prison inmate proceeding pro se with a civil rights action under

17    42 U.S.C. § 1983, alleging that between May 31, 2001 and October 9, 2002, defendant Pulsipher,

18    a correctional lieutenant, was deliberately indifferent to his serious medical needs.[1]

19            On February 2, 2007, this court denied defendant Pulsipher's motion for summary

20    judgment without prejudice to a limited reopening of discovery.  This court also recommended

21    that summary judgment be granted for defendants Bick and Steevers, but denied as to defendant

22    Andreasen.  On March 27, 2007, the district court adopted the findings and recommendations as

23    to defendants Bick and Steevers and also granted summary judgment as to defendant Andreasen.

24    _____

25        [1] Plaintiff's complaint includes a lengthy discussion of the authorities' perceived failure
      to provide adequate medical care as well as references to prior litigation on the subject, none of
      which is directly germane to the instant litigation.  The allegations giving rise to this lawsuit
26    begin at page seven of the narrative complaint, attached to the form complaint.

1    On May 23, 2007, the court denied plaintiff's motion to compel discovery.

2    Thereafter, on June 22, 2007, defendant Pulsipher filed his renewed motion for summary

3    judgment.

4    I. Facts[2]

5    Plaintiff has been diagnosed with anklyosing spondylitis (AS) and as far back as

6    1986, prison medical authorities have written "chronos" for a firm bed. Opposition (Opp'n),

7    Exs. A[3] at 1 (1986 chrono), 3 (1992 chrono), 5 (1996 chrono), 7 (1996 chrono), 10 (2001

8    chrono), 11 (2002 chrono) & K No. 22. Doctors also have suggested that if a firm bed was not

9    available, plaintiff should be allowed to put his mattress on the floor. Opp'n, Exs. C (2001

10   chrono) & L (2002 chrono).[4]  In an "Out-Patient Medical Supply/Appliance Prescription" dated

---

[2]  Several of defendant's undisputed facts are restatements of plaintiff's claims in the case. For example, the first "undisputed fact" is that "Plaintiff . . . claims that between May 31, 2001 and October 9, 2002 CMF staff did not consistently provide him a bed with a hard steel backing. . . ." Undisputed facts 2 and 5 follow the same pattern. From the structure of the statement, it not clear whether defendant adopts it. However, because he has included these "claims" in his statement of undisputed facts, the court finds them to be undisputed.

"Undisputed facts" 14 and 15 present a different challenge. In these two entries, defendant reproduces plaintiff's claim and then presents a slightly different version of the events. Accordingly, these appear to be disputed rather than undisputed facts and should not have been included in this document. Finally, undisputed fact 18 is not fully comprehensible and so will be disregarded.

[3]  Plaintiff has offered a mass of medical records as exhibits. These are not authenticated, but defendant has offered no objection to the consideration of the records. Because they appear to be plaintiff's medical records, the court will rely on most of them in resolving the motion for summary judgment. See Fed. R. Evid. 901(a) & (b)(4). Certain documents, however, do not contain enough information for the court to determine whether they are indeed plaintiff's records and so will not be considered in resolving this motion. See, e.g., Opp'n, Ex. O (triage notes). In addition, plaintiff has presented his own declaration in opposition to the motion for summary judgment. Portions of this declaration, recounting what Officer Brinhous told plaintiff, are hearsay; other portions, recounting what Brinhous told defendant or what happened to other inmates in H-2, are not based on plaintiff's personal knowledge. See, e.g., Opp'n, Declaration of Danny Gerome Young (Young Decl.) ¶¶ 6, 24. These portions will not be considered.

[4]  Plaintiff contends he could not put his mattress on the floor very often because of the limited space in his dorm and the fact that an inmate on the upper bunk would have stepped on him had his mattress been on the floor. He moved his mattress into the exercise room, but other inmates protested. Young Decl. ¶¶ 32-33; see also Declaration of Shawn LaCount (La Count Decl.) ¶ 7 (submitted on 2/13/06 in connection with plaintiff's pretrial statement). In his declaration in support of summary judgment, Pulsipher says that sleeping on the floor is not

2

1    December 6, 1999, a doctor (whose signature is unreadable), noted that plaintiff needed a

2    "cookie sheet metal backing for bed . . . to avoid flexion deformity with sagging springs."

3    Opp'n, Ex. C.

4            In May 2001, plaintiff was housed on M-Wing of Unit One of California Medical

5    Facility (CMF).  Young Decl. ¶¶ 2-3.  From June 26, 2000 through April 28, 2003, defendant

6    Pulsipher was the Second Watch Program Lieutenant for Unit One; his hours were 6:45 a.m. to

7    2:45 p.m.  Pulsipher Decl. ¶¶ 1, 4-5.  Lieutenants oversee the management of the unit;

8    correctional sergeants have direct and functional supervision; correctional officers "are the first

9    line of direct supervision over inmates. . . ."  Id. ¶ 6.

10           On May 31, 2001, the inmates housed on M-1 changed places with those housed

11   on H-2.  Young Decl. ¶ 3.  Young avers he became aware "that a magor [sic] housing change was

12   in the works" in April 2001.  Id. ¶ 2.  Pulsipher does not mention any large-scale change of

13   housing units, but agrees that "on May 31, 2001, Young was moved from M-107 (lower) (a bed

14   with a hard surface) to H-226 (lower) (a bed with springs)."  Pulsipher Decl. ¶ 9; Young Decl.

15   ¶ 4.  Pulsipher says he "was not notified of the move from one bed assignment to the other, nor

16   was I notified that any particular inmate had special bed needs."  Pulsipher Decl. ¶ 9.  This

17   reorganization was a "program change," which was not Pulsipher's responsibility.  Id.; see also

18   Opp'n, Ex. J (No. 6).  He was working, however, when these bed moves were undertaken.

19   Pulsipher Decl. ¶ 9.

20           Plaintiff began to complain to "the H-2 office" on the day of the transfer and

21   thereafter, because he "began to have increase [sic] pain and stiffness from the first night he slept

22   on the sagging springs in H-226L. . . ."  He also says he complained directly to Pulsipher within

23   seventy two hours after the move.  Young. Decl. ¶ 41.  Plaintiff explains that he complained

24   frequently to Pulsipher because plaintiff's personal experience as a housing clerk taught him that

25   _____

26   appropriate from a custody standpoint.  Motion for Summary Judgment (MSJ), Declaration of J.
     Pulsipher (Pulsipher Decl.) ¶ 20.

the lieutenant on a unit approved bed moves.  Id. ¶¶ 20-21, 42.  Plaintiff avers that, based on his

experiences as a housing clerk and his frequent presence in Pulsipher's office, he was aware that

copies of medical chronos were sent to the unit commander and kept on a clipboard in the office

Pulsipher shared with the unit captain.  Young Decl. ¶ 27 & Ex. C-1 (a 1991 medical order for a

lower bunk for plaintiff, sent to a "Lt. Olsen").

        In his declaration, Pulsipher says that plaintiff "did not bring to my attention that

he needed any special accommodations during this time."  Pulsipher Decl. ¶ 9.  However, in

response to a question about plaintiff's stay in H-226L, Pulsipher concedes plaintiff did speak to

him regularly and made complaints.  Opp'n, Ex. J (No. 15).

        Plaintiff also avers he showed Pulsipher medical chronos about the cookie sheet

bed, a copy of an order issued by Magistrate Judge Hollows in 1992 about CMF's responsibility

to provide plaintiff with a firm bed, and a CDC-1824, a "Reasonable Modification or

Accommodation Request," which fully described plaintiff's disability and reiterated plaintiff's

request for a cookie sheet bed.  Young Decl. ¶¶ 25-26; Opp'n, Exs. F-1 (order) & X (CDC 1824,

dated 2/6/02).

        Pulsipher contends, however, that this form does not look familiar to him even

after having reviewed it during the course of this litigation.  Pulsipher Decl. ¶ 12; Opp'n, Ex. J

(Nos. 3, 4).  These requests, he avers, are processed by the appeals coordinator, so if it had been

given to him, he would have sent it to the appeals coordinator.  Pulsipher Decl. ¶ 12.  In his

declaration, Pulsipher says that "if . . . Young was moved from a hard bed surface to a spring

bed, he did not complain to me."  Id. ¶ 10.  He also contends that lieutenants and other higher

ranking officers generally do not address "the on-going needs of each and every inmate.  At my

level, I would generally only become aware of a medical condition that was life-threatening or

that required immediate outside medical treatment.  Routine matters, like those Mr. Young

complains of, would be handled by the Program Sergeant."  Id. ¶ 6.

/////

1       Young counters with two examples of Pulsipher's involvement in "routine

2   matters."  In the first such instance, Pulsipher agreed to move inmate Shawn LaCount to a cell

3   near plaintiff's so plaintiff could keep an eye on this younger inmate if plaintiff agreed to drop a

4   grievance he had filed.  Young Decl. ¶ 35 & Ex. T.  In addition, Robert Hussey avers that

5   Pulsipher gave him an ADA-1824 form, which allowed him to help his friend, Clifton Feathers,

6   make telephone calls, even though Hussey would not ordinarily be eligible to be a disabled

7   assistance worker because he is disabled himself.  Opp'n, Exs. W (Hussey Decl.) & Y (1824

8   form for Feathers).  Hussey also avers that Pulsipher was usually available to resolve problems.

9   Opp'n, Ex. W.

10      Plaintiff was moved several times during the period covered by the complaint,

11  May 31, 2001 through October 9, 2002.  Compl., Attach. at 7-9.  Pulsipher's characterization of

12  the bed type is listed first; plaintiff's is listed second if it is different from Pulsipher's.

| | Date | Location | Bed Type |
|---|---|---|---|
| 14 | 5/31/01 | H-226-L | springs |
| 15 | 7/06/01 | J-105 | pan/springs |
| 16 | 7/07/01 | H-226-L | springs |
| 17 | 2/23/02 | I-332 | pan/cookie sheet |
| 18 | 3/11/02 | I-138 L | springs |
| 19 | 3/11/02 | J-114-L | springs |
| 20 | 3/14/02 | J-109L | pan/springs |
| 21 | 5/01/02 | S-317 | concrete |
| 22 | 5/01/02 | J-109L | pan/springs |
| 23 | 9/25/02 | J-126L | springs/cookie sheet |
| 24 | 10/09/02 | H-102L | pan |

25  Pulsipher Decl. ¶ 15 & Ex. A; Young Decl. ¶¶ 10-19.  Pulsipher says the bed move on July 6,

26  2001 was made after the conclusion of his shift; that March 11, 2002 was his day off; that the

1 moves on May 1, 2002 were made after his shift.  Pulsipher Decl. ¶ 10.[5]  He continues, "To the

2 extent I was on duty for the remaining dates, I would not have been made aware of the change,

3 nor required to authorize it, whether Young was transferred from a hard surface bed to a soft

4 surface bed or the reverse."  Id.  He adds he was not responsible for the housing changes and that

5 "if a medical doctor issues a medical order impacting a sleeping assignment, that order would be

6 most likely handled by sergeants and correctional officers without my involvement."  Id. ¶ 18.

7 Pulsipher concludes he was not indifferent to plaintiff's needs and that when plaintiff informed

8 him of a particular need, he "acted to verify his housing status to ensure that he was properly

9 housed . . . by looking in unit control area at the bed assignment card. . . . In each instance, he

10 was appropriately housed on a firm bed."  Id. ¶ 21.

11          Plaintiff alleges that eventually he could not stand erect because of the pain in his

12 neck, back and hip.  Young Decl. ¶ 4.  A physical therapy referral from July 18, 2001 notes that

13 the treatment goal was "encourage good posture, lung expansion" and that the "rehab potential

14 was 'fair.'  Referring back to 'tune up' due to recent loss of usual firm bed."  Opp'n, Ex. E at 3.

15 Physical therapy evaluations from April and August 2002, noted that plaintiff's pain was both

16 constant and intermittent, but that his posture was good.  Id. at 2.  Physician's Notes from an

17 illegible date in 2002 contain a drawing of plaintiff's stooped posture and notes that "a flat rigid

18 bed plane for sleep seems appropriate" to plaintiff's goal "of maintaining . . . an orthogonal

19 spinal posture."  Opp'n, Ex. N.  The frustration and pain exacerbated plaintiff's underlying

20 depression.  Young Decl. ¶¶ 46-47; Opp'n, Ex. R (Case Manager Progress Note); but see Ex. S

21 (Evaluation and Treatment Plan, 9/12/02, listing plaintiff's bed assignment at J-109L & noting

22 "sleeping well").

23 /////

24 /////

25 ————————————————

26    [5]  The times of the moves are included on the movement sheet, attached as Ex. A to
Pulsipher's declarations.

II.  Summary Judgment Standards Under Rule 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party

7

1   must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome

2   of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

3   (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.

4   1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could

5   return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,

6   1436 (9th Cir. 1987).

7          In the endeavor to establish the existence of a factual dispute, the opposing party

8   need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the

9   claimed factual dispute be shown to require a jury or judge to resolve the parties' differing

10  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary

11  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

12  genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory

13  committee's note on 1963 amendments).

14         In resolving the summary judgment motion, the court examines the pleadings,

15  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

16  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,

17  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the

18  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.

19  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to

20  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen

21  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.

22  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply

23  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

24  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

25  'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

26  /////

1          On May 26, 2004, the court advised plaintiff of the requirements for opposing a

2  motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  See Rand v. Rowland, 154

3  F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

4  III.  Analysis

5          In Estelle v. Gamble, 429 U.S. 97, 106 (1976), the Supreme Court held that

6  inadequate medical care did not constitute cruel and unusual punishment cognizable under

7  section 1983 unless the mistreatment rose to the level of "deliberate indifference to serious

8  medical needs."

> In the Ninth Circuit, the test for deliberate indifference consists of two parts. First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." Second, the plaintiff must show the defendant's response to the need was deliberately indifferent.  This second prong-defendant's response to the need was deliberately indifferent-is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference. Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.

16  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal citations & quotations omitted); see

17  also McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir.1992), overruled in part on other grounds,

18  WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997).  An official's failure to

19  provide necessary medical appliances may also rise to the level of an Eighth Amendment

20  violation.  See Shakka v. Smith, 71 F.3d 162, 166-67 (4th Cir. 1995).  In addition, deliberate

21  indifference may consist of an official's intentionally denying or delaying access to medical care

22  or intentionally interfering with treatment ordered by a physician.  Estelle, 429 U.S. at 104-05.

23          Defendant does not dispute that plaintiff's condition and his need for a firm bed

24  constitute a serious medical need within the meaning of Eighth Amendment jurisprudence.  He

25  also does not dispute the fact that during most of the time covered by the complaint, plaintiff was

26  assigned to a mattress supported by springs rather than by a hard backing.  Similarly undisputed

1   is the fact that sleeping on a soft bed caused plaintiff problems with his posture.  Finally,

2   defendant does not dispute the fact that during the relevant time period, plaintiff's doctors had

3   written him chronos–medical orders–for a firm bed.

4        Instead, defendant argues that routine matters such as bed assignments would be

5   handled by sergeants or correctional officers,[6] that he was unaware of plaintiff's need for a firm

6   bed, and that when plaintiff did make his complaints known, defendant checked plaintiff's

7   housing and found it appropriate.  Plaintiff raises factual disputes as to each of these points.

8   First, he offers evidence that in the case of himself, LaCount, Hussey and Feathers, defendant

9   Pulsipher became involved in routine matters.  Young Decl. ¶ 35; Hussey Decl.  Second, he avers

10  that within seventy-two hours of his move he complained to Pulsipher, suggesting that had

11  Pulsipher checked then, he would not have found plaintiff appropriately housed on a firm bed.

12  Compare Young Decl. ¶ 41 and Pulsipher Decl. ¶ 21.  Finally, plaintiff offers evidence

13  suggesting that unit lieutenants were indeed notified of the medical needs of particular inmates.

14  Opp'n, Ex. C-1.  These disputed issues of material fact defeat summary judgment.

15       Defendant Pulsipher further argues that he is entitled to qualified immunity on this

16  issue.  Government officials performing discretionary functions generally are shielded from

17  liability for civil damages insofar as their conduct does not violate clearly established statutory or

18  constitutional rights of which a reasonable person would have known.  Harlow v. Fitzgerald, 457

19  U.S. 800, 818 (1982).

20       In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court set forth a particular

21  sequence of questions to be considered in determining whether qualified immunity exists. The

22  court must consider this threshold question: "Taken in the light most favorable to the party

23  asserting the injury, do the facts alleged show the officer's conduct violated a constitutional

24  right?"  Id. at 201.  If no constitutional right was violated if the facts were as alleged, the inquiry

25

26       [6] Defendant Pulsipher does not say he lacked the authority to order plaintiff moved to a
different bed.

1  ends and defendants prevail.  Id.  The court has found that taken in the light most favorable to

2  plaintiff, the evidence of Lieutenant Pulsipher's awareness of plaintiff's chronos for a firm bed

3  and his involvement in routine matters in Unit One show his deliberate indifference to plaintiff's

4  serious medical needs.

5        If, however,

6         a violation could be made out on a favorable view of the parties'
          submissions, the next, sequential step is to ask whether the right
7         was clearly established.... 'The contours of the right must be
          sufficiently clear that a reasonable official would understand that
8         what he is doing violates that right.'... The relevant, dispositive
          inquiry in determining whether a right is clearly established is
9         whether it would be clear to a reasonable officer that his conduct
          was unlawful in the situation he confronted.

10

11  Id. at 201-02 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  The reasonableness of

12  a defendant's conduct is judged "against the backdrop of the law at the time of the conduct."

13  Brosseau v. Haugen, 543 U.S. 194, 198 (2004).  The defendant should not be subject to liability

14  if the law at that time did not clearly establish that the defendant's actions would violate the

15  Constitution.  Id.  The Supreme Court has emphasized that "the qualified immunity inquiry must

16  be undertaken in light of the specific context of the case."  Id.  The court must determine whether

17  the contours of the right were sufficiently clear that a reasonable official would understand that

18  what he was doing violated that right.  Anderson, 483 U.S. at 640.  "Sufficient clarity" for the

19  purposes of the qualified immunity inquiry does not require precedent directly on point; it is

20  sufficient if "unlawfulness is apparent in light of preexisting law. . . ." Devereaux v. Abbey, 263

21  F.3d 1070, 1075 (9th Cir. 2001).

22        The law governing a prison official's responsibilities to follow a specific doctor's

23  orders under the circumstances was "clearly established" during the period at issue in the

24  complaint.  Estelle v. Smith, 429 U.S. at 104-05; see also Tolbert v. Eyman, 434 F.2d 625, 626

25  (9th Cir. 1970) (Eighth Amendment violated if warden refused to allow inmate to have

26  medication for serious medical need).  Based on this law, it should have been sufficiently clear

11

1  that depriving plaintiff of a firm bed could violate the Eighth Amendment in light of plaintiff's

2  medical needs.  Pulsipher is not entitled to qualified immunity.

3        IT IS HEREBY RECOMMENDED that defendant Pulsipher's motion for

4  summary judgment be denied.

5        These findings and recommendations are submitted to the United States District

6  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty

7  days after being served with these findings and recommendations, any party may file written

8  objections with the court and serve a copy on all parties.  Such a document should be captioned

9  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

10  shall be served and filed within ten days after service of the objections.  The parties are advised

11  that failure to file objections within the specified time may waive the right to appeal the District

12  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

13  DATED:  February 11, 2008.

15                                                   _____

16                                                   U.S. MAGISTRATE JUDGE

18  2/youn2225.57

12